**David McZICK, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 9950.**

United States District Court
N. D. Alabama, S. D.

Dec. 28, 1961.

Harold T. Ackerman, Birmingham, Ala., for plaintiff.

Macon L. Weaver, U. S. Atty., Huntsville, Ala., for defendant.

ALLGOOD, Justice.

This matter is before the Court on the pleadings and the record of the administrative proceedings. Plaintiff appeals from an adverse decision of the Secretary disallowing his application filed March 28, 1960, to establish a period of disability and for disability insurance benefits, under the provisions of the Social Security Act, as amended, 42 U.S.C.A. § 301 et seq. Date of onset of disability was alleged as September 26, 1958 (Tr. 5).

Plaintiff was born on July 28, 1909, and completed the sixth grade of elementary school (Tr. 6). McZick's earnings record, as compiled by the Bureau, reveals that he met the earnings requirement of the Social Security Act, as amended, during the alleged quarter of disability and that he will last meet the twenty out of forty earnings requirement of the Act during the calendar quarter ending March 31, 1963 (Tr. 6).

Plaintiff's adult employment consisted of that of a coal miner and for the last several years of his employment he worked as a timber setter, shoring up the walls and ceilings of the mine to keep them from falling. He worked full time in the mine until the mine ceased operating on September 26, 1958, and his employment was terminated as a result thereof (Tr. 7).

McZick testified that he attempted to obtain work in another mine, with no success, and that he attempted to obtain employment as a carpenter. He testified that he drew his unemployment insurance benefits in full (Tr. 27) and that he also drew compensation benefits as a result of having contracted pneumoconiosis while employed, and received benefits in the amount of $44.00 a week, receiving a total of approximately $860.00 (Tr. 28).

Plaintiff testified that he first went to Dr. Ward at Norwood Hospital in Janu-

ary of 1955 for treatment of arthritic bronchitis, duodenal ulcer and gastritis and that Dr. Ward treated him for about three months—that under treatment his condition cleared up to such an extent that he could go back to work (Tr. 29). McZick stated that his ulcer could be fairly well controlled by diet (Tr. 30), that he sprained his hip in 1957 and had suffered pain in the hip joints since for which he had to take shots (Tr. 30 & 31). Plaintiff also complained of swelling of the hands and feet and of a bad heart, testifying that Dr. Morgan had told him that he had a bad heart (Tr. 31).

While we have some conflict of medical opinion as to this plaintiff's physical condition, we find a report of a thorough examination given by Dr. Robert H. Yoe, Jr., a highly respected heart specialist, dated January 12, 1961 (Tr. 78) which does not tend to bear out any diagnosis of a heart condition that would seriously incapacitate McZick. In this report Dr. Yoe gave as his impression the following:

"One—No definite clinical or laboratory evidence of organic heart disease.

"Two—Pulmonary insufficiency, slight.

"Three—Bronchial asthma and probably slight diffuse pulmonary fibrosis represent the etiology for No. 2.

"Four—It is not possible to adequately evaluate the treatment program he has been on. The patient states that the medication does help the wheezing a little bit." (Tr. 79–80)

A prior report by Dr. William L. Hawley contains the following comment:

"The cardiac shadow is rather like a water bottle, the rt. border being almost as rounded as the left with a normal waist. This suggests to me some congenital cardiac lesion accounting for the prolonged PR interval and increased size of the P waves though there is no frontal branch block configuration. These evidences were not available at the time the patient was here and possibly circulation time would have been helpful. *The lung fields are not congested.* (Emphasis added) To suggest a recycling through a sizable intra-atrial effect. The findings are not compatible with rheumatic valvular disease. They do not explain either the breathing test characteristics of greater than normal VC and considerably less than normal first sec. capacity *which I suspect to be on the basis of inadequate effort.*

"Diagnosis: Heart disease unknown etiology with cardiomegaly, without evidence of congestive failure. American Heart Association Class 2B." (Tr. 67–68)

While plaintiff without question suffers from a combination of ills, I do not feel after a careful study of all of the medical reports and transcript of McZick's testimony, that they are such as to constitute a medically determinable mental or physical impairment expected to result in death or to be of long continued and indefinite duration and of that degree of severity as to have precluded the claimant from engaging in substantial gainful activity prior to March 28, 1960.

Plaintiff's disability does not in this Court's opinion meet the test set down in Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321, or in Aaron v. Fleming, M.D.Ala., 1958, 168 F.Supp. 291.

Plaintiff was trained as a cook in the Army (Tr. 32). It is entirely possible that he could obtain employment as such, his physical disabilities would not prevent him doing so. He could even perform many duties in connection with mining—he might obtain employment as a checker or in the supply house or even as a watchman. He could drive a car or a truck.

It appears that the Secretary's decision is supported by substantial evidence. Therefore:

It is Ordered, Adjudged and Decreed that the decision of the Secretary be and the same is hereby affirmed.